**In re: Geraldine Kay SMITH, Debtor.**

**Gold Country Lenders, Appellant,**

v.

**Geraldine Kay Smith, Appellee.**

**In re: Geraldine Kay SMITH, Debtor,**

**Geraldine Kay Smith, Appellant,**

v.

**Gold County Lenders, Appellee.**

Nos. 00–36014, 00–36032.
BAP Nos. OR–99–1543–RyKM,
OR–99–01542–RyKM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2002.

Decided May 16, 2002.

Before B. FLETCHER, O'SCANNLAIN, and BERZON, Circuit Judges.

MEMORANDUM*

Gold Country Lenders ("Gold Country") appeals the Bankruptcy Appellate Panel's ("BAP") decision which, *inter alia,* reduced the bankruptcy court's award in its favor by $15,000. Smith cross-appeals the BAP's decision, raising over a dozen claims of error.

We have jurisdiction pursuant to 28 U.S.C. § 158(d), and review the decision of the BAP *de novo. Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.),* 210 F.3d 999, 1001 (9th Cir.2000). For the reasons assigned, we affirm the decision of the BAP in every respect.

Because the parties are familiar with the facts, we recite here only those necessary to explain our decision.

## I. BACKGROUND

In 1993, Hirsch borrowed $15,000 from Gold Country.[1] In consideration for the $15,000, Hirsch executed a note ("the S.P.S. note") and deed of trust on a California property. S.P.S., a since-dissolved corporation, was the payee of the note. The deed of trust was also in S.P.S.'s favor and was recorded. Unfortunately, the S.P.S. note cannot now be found.

The Texerias later paid off S.P.S. on Hirsch's behalf, and a note by Hirsch in the Texerias' favor was executed for the same amount ("the Texeria note"). Shortly thereafter, United initiated foreclosure proceedings against the California property.

In 1994, Smith, who worked with Hirsch, approached Gold Country in hopes of arranging a loan intended in part to purchase the California property. Smith eventually borrowed $28,000 through Gold Country and she and Hirsch executed a $28,000 note (the "$28,000 note") and deed of trust on the California property. That same day Smith also executed a cross-collateral installment note to Gold Country for $43,000 at 12% interest, and a cross-collateral deed of trust recorded against real property Smith owned in Oregon as additional security. A $43,000 balloon payment on the note was due June 25, 1995, and interest was to be paid in conformity with the terms of the S.P.S. note and the $28,000 note, both secured by the deeds of trust on the California property and cross-secured by the Oregon property. The $43,000 note itself recited the fact that it

was executed *only* as additional security for the two prior notes and deeds of trust, and was not itself offered in consideration of an "additional loan." It also stated that upon payment in full of the $28,000 note and the S.P.S. note, the $43,000 note would be cancelled and the deed would be reconveyed.

Smith continued to make interest payments on the $43,000 note through June 1996, but did not make a balloon payment in June 1995. After failed attempts to reach Smith, Gold Country filed a notice of default and election to sell the Oregon property pursuant to the $43,000 note and deed of trust. The notice declared that Gold Country was entitled to "all sums due and owing on the obligation secured by the deed of trust," *to wit* "$43,000 principal plus interest from June 8, 1994 until paid at the rate of 12% per annum on the amount aforesaid."

Smith filed a Chapter 13 petition in the spring of 1997, and her third amended plan was confirmed the following year.

Gold Country filed a $49,174.82 proof of claim in the bankruptcy court, and later a third amended proof of claim, asserting a $61,182.59 secured claim that included attorney's fees and costs. Smith filed objections.

The bankruptcy court issued a letter ruling allowing Gold Country a secured claim in the amount of $43,000, plus $9,796.60 in interest, less $1,000 in statutory damages for Gold Country's violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. After adding Gold Country's fees and costs into the total award, the court entered its final order, allowing

---

1. Gold Country, a California real estate finance corporation, operates as a middleman matching investors who fund loans to borrowers. The loans are secured by real property.

While the payee of the note and deed of trust in these transactions is Gold Country, the beneficial interests are subsequently assigned to the actual investors.

Gold Country's claim in the amount of $68,980.91.[2]

Smith, acting *pro se*, appealed the bankruptcy court decision to the BAP.

The BAP, on August 4, 2000, affirmed the bankruptcy court's findings that Gold Country was entitled to a secured claim and to proceed against the property and assert a claim in Smith's bankruptcy proceeding. However, the BAP *reversed* the bankruptcy court's calculation of the principal amount of the claim, finding that Smith did not assume the Texeria note, and that the S.P.S. note, the note incorporated into the $43,000 cross-collateral note, "was paid off." The BAP remanded to the bankruptcy court for a re-calculation of attorney's fees and costs excluding all fees and costs associated with the S.P.S. note or the Texeria note. The BAP rejected Smith's remaining arguments challenging the bankruptcy court's decision.

Gold Country appeals the BAP's decision to reduce its award, and Smith cross-appeals on a number of issues.

## II. DISCUSSION

### A. *Gold Country's Appeal*

Gold Country argues that the BAP erred in holding that it was not entitled to $15,000 of the principal amount awarded by the bankruptcy court, nor entitled to any interest or attorney's fees or costs related to the S.P.S. note or the Texeria note. Gold Country contends that even though the $43,000 cross-collateral note incorporated the "wrong" $15,000 note (*i.e.*, the original $15,000 note given to S.P.S. instead of the then-existing Texeria note), Smith intended to assume the "subsequent" Texeria note and must be liable for it. For the reasons given by the BAP, we disagree.

There exists no evidence that Smith assumed liability on the Texeria note. The $15,000 note executed by Hirsch in favor of S.P.S. was paid off by the Texerias, who became beneficiaries of the new note. The S.P.S. and Texeria notes listed different beneficiaries, and appear to have different terms with respect to the interest rate—the S.P.S. note at 12% interest, the Texeria note at 15% interest. Most importantly, the cross-collateral installment note refers only to the S.P.S. note, not the Texeria note. We do not presume that Smith intended to assume responsibility for a note materially different from the one incorporated by the explicit language of the cross-collateral installment note.

### B. *Smith's Cross–Appeal*

We dispose of Smith's claim that the BAP erred in failing to award her actual damages as a result of Gold Country's TILA violation in a published opinion filed concurrent with this memorandum.

With regard to the remaining issues Smith raises in her appeal, after careful consideration of the record, briefs, and oral argument, we find each of them to be without merit for substantially the reasons stated by the BAP.

## III. CONCLUSION

We affirm the decision of the BAP and remand to the bankruptcy court to re-calculate, in light of our holding, Smith's liability to Gold Country and the reasonableness of any attorney's fees.

AFFIRMED.

---

**2.** This award was a composite of the following: (1) $43,000 principal balance owed; (2) $4,170.41 interest to the petition date; (3) $22,843.30 in attorney's fees and costs; and (4) less $1,032.80 in TILA damages and costs.